UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In the Matter of:

ACCLAIM ENTERTAINMENT INC.

                Debtor.

----------------------------------------------------------X

Chapter 7
Case No.

AFFIDAVIT FOR RETENTION
OF SPECIAL COUNSEL

State of New York )
County of Nassau )

GARY B. SACHS, Esq., being duly sworn, deposes and says:

1. Deponent is a member of the firm of Hofheimer Gartlir & Gross, LLP ("HG&G"), with offices at 530 Fifth Avenue, 9th Floor, New York, New York 10036 and 1010 Northern Boulevard, Suite 209, Great Neck, New York 11021. Deponent is duly admitted to practice law in the State of New York, the Federal District Courts for the Southern and Eastern Districts of New York, and the Circuit Courts of Appeals for the Second Circuit. This Affidavit is submitted in support of an Order under Section 327(e) of the Bankruptcy Code authorizing the employment and retention of HG&G as special litigation counsel on a pending lawsuit which deponent's firm represents the plaintiff in. The suit is pending in the United States District Court for the Southern District of New York and has been assigned to Honorable Denise L. Cote. The suit is captioned:

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANNODEUS INC.,
                      Plaintiff,
      - against -

EUGENE CIARKOWSKI, EUGENE R. BOFFA,
JR., STEVEN KAREL, ECW MANAGEMENT GROUP,
and BOFFA, SHALJIAN, CAMMARATA & O'CONNOR, L.L.C.,
                      Defendants.
----------------------------------------------------------X

Index No.: 04 CV 01633

(DLC)

{ 00155/002/01086078:2-MDD}

2. Deponents and HG&G have had no present connection with the debtor, any of the Creditors of this Debtor, or any other party in interest or their respective attorneys except as set forth herein.

3. The plaintiff in the aforementioned lawsuit, Annodeus, Inc. ("Annodeus") is a Delaware corporation who had its sole place of business located in the Debtor's offices in Glen Cove, New York. Annodeus is a wholly-owned subsidiary of a corporate entity known as T&M Holdings Inc.. T&M Holdings Inc. in turn is a wholly-owned subsidiary of the Debtor. Accordingly, Alan Mendelsohn, the Chapter 7 Trustee herein is the beneficial owner of all of the of equity interest of Annodeus. Upon information and belief, all of the officers and directors of Annodeus resigned after the Debtor's filing. Annodeus is no longer an operating entity, it has no employees and its sole asset is the above captioned suit.

4. Commencing in the middle of 1999, and through February 2000 Annodeus, with funding from the Debtor entered into a series of transactions with a corporate entity known as HHG Corp. d/b/a Extreme Championship Wrestling. The transactions involved Annodeus purchase of a 15% equity interest in HHG, $1,525,000 of loans from Annodeus to HHG, and a license from HHG to Annodeus for Wrestling Videos. As collateral for its loans of $1,525,000, Annodeus received a security interest and liens on all of HHG's assets.

5. Thereafter on April 6, 2001 HHG filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The case was assigned to the Honorable Adlai S. Hardin in the Bankruptcy Court in Westchester, New York. HHG's proceeding was converted to a Chapter 7 proceeding.

6. After HHG's conversion to a Chapter 7, Sachs & Kamhi, P.C. ("S&K")[1], was

---

[1] Prior to joining HG&G deponent was a member of S&K and its predecessors for over 20 years.

{ 00155/002/01086078:2-MDD}            -2-

retained by the Debtor and Annodeus to represent Annodeus on its claims against HHG. S&K represented Annodeus until August 1, 2002 when deponent became a member of HG&G. Thereafter HG&G represented Annodeus and the Debtor on the HHG matter.

7. The assets of HHG were discovered and liquidated by deponent and HHG's trustee. Our efforts resulted in a third party, the World Wide Wrestling Federation coming in and buying from HHG's Chapter 7 trustee all of HHG's assets. From the proceeds of this sale Annodeus received $1,700,000 in payment of its liens and $300,000 for cancellation of its video license. Annodeus was a guarantor of the debtor's secured obligation to GMAC. It had granted to GMAC as collateral for GMAC's advances to the Debtor a lien on all of its assets. Annodeus caused the $2,000,000 it received from the sale to be turned over to GMAC to reduce the Debtor's and Annodeus's indebtness to GMAC. S & K and HG&G were paid by the Debtor for all their legal services on this matter. Their last payment was received in October 2003. None of the payments for these services were preferential as they were made outside the 90-day period and neither S&K nor HG&G were insiders of Annodeus or the Debtor.

8. The $2,000,000 from the sale and license cancellation was in full and complete satisfaction of any and all claims that Annodeus/Acclaim had against HHG, its officers and directors. Carved out of the settlement were any causes of action that Annodeus had on its $1,525,000 of loans, to HHG, against three individuals (Eugene Ciarkowski, Eugene R. Boffa, Steven Karel), a law firm (Boffa, Shaljian, Cammarata & O'Connor, LLC) of which Ciarkowski and Boffa were members, and a business entity (ECW Management Group) that the three individuals (Boffa, Ciarkowski and Karel) were part of.

9. In January 2003, HG&G, pursuant to an oral agreement was retained by Annodeus and the Debtor to prepare and file a complaint on behalf of Annodeus against the aforementioned

defendants. HG&G was to bill Acclaim for their services at HG&G's normal hourly billing rates plus be reimbursed for its disbursements on a monthly basis. As an initial retainer for its services HG&G received $25,000.

10. Thereafter litigation was instituted against the above defendants. In summary form the litigation involves causes of action for fraud, negligence and conversion of collateral, on the defendants transactions with Annodeus on its loans to HHG. The cause of action request damages between $1,000,000 to $3,000,000 (RICO Action) plus applicable cost including attorneys fees.

11. In February 2004 based upon deponent's discussions with certain insiders of Acclaim the terms of HG&G's retention for the litigation was modified. The modification was written and provided as follows:

    (a) HG&G would be paid by the Debtor one half of the present balance owed to it ($17,500) with execution of the agreement and balance would be carried.
    (b) HG&G would bill the Debtor on a monthly basis for its time charges and disbursements. HG&G's time charges were to be billed at its normal hourly rates.
    (c) As against HG&G's monthly bills the Debtor would pay on a monthly basis the sum of $10,000 plus disbursements.
    (d) Any balance from (a) above and (c) would be paid at rate of $10,000 per month until HG&G was paid in full.

12. HG&G received half of the balance it was owed with a return of the modified retainer but didn't get paid any sums thereafter.

13. In June 2004 HG&G's retention agreement was further modified. By that date a motion by the defendants to dismiss the complaint had been granted. HG&G and Annodeus, and the Debtor agreed that our time charges to prepare and file an amended complaint and oppose a motion to dismiss the amended complaint would be limited to $20,000. The $20,000 was to be paid as billed, only if any motion to dismiss the amended complaint was denied. HG&G also

agreed, if it was not successful and a motion to dismiss was granted there would be no charge for these services. HG&G services were successful and the defendant's motion to dismiss the first complaint was denied but the retention agreement was breached because no payments were made to HG&G.

14. After giving the Debtor credits for the sums it paid HG&G on this litigation and a time credit approximating $50,000[2], HG&G is presently owed approximately $300,000 for fees and disbursements. None of the Debtor's payments to HG&G on this litigation were made within the 90-day preference period, and HG&G is not an insider of the Debtor.

15. Under §475 of the New York Judiciary Law and under the "Common Law" HG&G has a charging and retaining lien on the proceeds recovered from this litigation. HG&G is willing to partially waive its lien and limit any compensation herein to be only from any proceeds recovered from the defendants in the within suit and to an amount as awarded by this court under section §327 and 330 of the Bankruptcy Code. The aforesaid limitation and partial waiver is conditioned upon HG&G being retained by an order of this court which encompasses the terms and conditions of the annexed retainer agreement between HG&G and the Trustee.

16. HG&G represents that it neither holds nor represents any interest adverse to the Debtor or this estate on the matter its retention is being requested for. Any settlement of the suit will be subject to this court's approval in an appropriate order.

17. Even though HG&G is not disinterested because they are a creditor of the debtor, Deponent submits that its retention is not adverse and is in the best interest of this estate for the following reasons:

    (a)    Annodeus to continue the litigation needs counsel. On a practical basis the Trustee

---

[2] Approximately $70,000 of time charges were expended by HG&G to prepare and file the first amended complaint and to oppose the defendants motion to dismiss this complaint. This credit is given even though Annodeus and the Debtor breached their retainer agreement with HG&G by not paying the $20,000 plus $10,000 a month plus disbursements.

{ 00155/002/01086078:2-MDD } -5-

doesn't have the funds to pay for the services required by counsel for this litigation. Another law firm would not take on this litigation on a contingency basis with HG&G's first lien on the proceeds of this suit. HG&G retention allows Annodeus and the Debtor's interest to be represented at no charge to this estate unless there is a recovery on the within litigation.

(b) The within litigation is so complex that the learning curve for another firm to get up to speed would be difficult, and lengthy. Further the substitution of another firm at this point in time would be detrimental to a successful result.[3]

17. HG&G has no agreement with any other entity to share with such entity any compensation received by the firm in connection with this litigation, except among partners, of counsel and its associates.

WHEREFORE deponent request that the court enter the annexed order and for such other and further relief as the court deems just and proper.

Dated: April 26, 2005
New York, New York

HOFHEIMER GARTLIR & GROSS, LLP

By: _____
GARY B. SACHS, ESQ. (GS 4327)
530 Fifth Avenue
New York, New York 10036
212-818-9000

Sworn to before me this
26th day of April, 2005

Notary Public
_____
**MARILENE DUARTE**
Notary Public, State of New York
No. 01DU6083897
Qualified in Nassau County
Commission Expires November 25, 2006.

---

[3] This litigation has just been sent out for mediation which must be completed by august 1, 2005.

{00155/002/01086078:2-MDD}       - 6 -

## RETAINER AGREEMENT
## RE ANNODEUS v. CIAROKOWSKI ET et al

Agreement made this 26th day of April 2005 by and between Hofheimer Gartlir & Gross, LLP with offices at 530 Fifth Avenue, 9th Floor, New York, New York 10036 and 1010 Northern Boulevard, Suite 209, Great Neck, New York 11021 (hereinafter Special counsel) and Alan B. Mendelsohn the Chapter 7 Trustee of Acclaim Entertainment Inc. ("Trustee").

1. This retention agreement is not effective unless approved by an order of the Bankruptcy Court.

2. Special counsel is retained by the Trustee Nunc Pro Tunc to the date of "Acclaims" Chapter 7 filing.

3. Special counsel asserts that it is presently owed approximately $300,000 for its fees and disbursements on the above referenced litigation and has under state law a lien on any proceeds recovered from the suit up to the amount it is owed. Special counsel has agreed to partially waive its lien and to limit its fees and disbursements for its services and cost on the within suit to an amount as amount awarded by the Bankruptcy Court. The amount as awarded by the Bankruptcy Court will be pursuant to Sections 327 and 330 of the Bankruptcy Code. The amount awarded will also be limited to being paid only from any proceeds recovered from the defendants in the suit.

4. In no event will the trustee herein be responsible for the fees and cost of special counsel to process the aforementioned suit after the date of Acclaims Bankruptcy. All fees and disbursements shall be paid to special counsel solely from any recovery obtained from the defendants in the above-referenced suit.

{ 00155/002/01086338:1-MDD}

5. Nothing contained herein shall prejudice or bar special counsel from filing at anytime an application to withdraw as counsel to Annodeus in the suit.

6. Special counsel billing rates for 2004 and 2005 and the personnel anticipated to work on the suit are set forth in annexed Exhibit "B".

HOFHEIMER GARTLIR & GROSS, LLP

By: _____
GARY B. SACHS, ESQ. (GS 4327)
Member of the Firm
530 Fifth Avenue
New York, New York 10036
212-818-9000

Alan B. Mendelsohn
Chapter 7 Trustee

_____
Alan B. Mendelsohn

{00155/002/01086338:1-MOD}

### Exhibit B

The principal attorneys and associates designated to represent the Debtor and their current standard hourly rates are as follows:

| Attorney | Position | Hourly Rate 2004 | Hourly Rate 2005 |
| --- | --- | --- | --- |
| Douglas Gross | Partner | $ 400 | $ 425 |
| Gary Sachs | Partner | $ 400 | $ 425 |
| Kristin Angelino | Associate | $ 225 | |
| Joseph Geoghegan | Associate | | $ 185 |

The hourly rates setforth above are subject to periodic adjustment. Other attorney and paralegals may from time perform services. The hourly rates are HG&G's standard hourly rates for similar work. In addition, HG&G charges its clients for expenses incurred on their matter at a rate which produces no profit and covers their cost."

---

Note: Douglas Gross will be the main trial attorney on this matter. A copy of his resume is attached.

{00155/002/01086364:1-MDD}

# HOFHEIMER GARTLIR & GROSS, LLP

530 Fifth Avenue
New York, New York 10036
(212) 944-0500
(212) 897-4979 fax

1010 Northern Boulevard
Great Neck, New York 11021
(516)336-2592
(516)336-2591 fax

TO:   Noelle Fischer, Esq.

FROM:  Gary B. Sachs, Esq.

Fax No.: 516-826-0222

Fax No.: (516) 336-2591

Date: June 7, 2005

Pages: 10 (Including cover page)

IF MESSAGE IS NOT RECEIVED IN GOOD CONDITION, PLEASE CALL THE OPERATOR AT
(516) 336-2592.

Comments:

Original to follow.

**CONFIDENTIAL AND PRIVILEGED**

The information contained in this facsimile message is legally privileged and confidential information intended only for the sole use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States postal service. Thank you.

{ 20815/001/01088706:1-MDD}